(109 App. Div. 126.)

### SEARS et al. v. PALMER.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1905.)

DEEDS—CONSTRUCTION—ESTATES CONVEYED—REMAINDER.

　　Where a deed recited a conveyance to a mother, who paid the consideration and accepted a delivery of the deed, "for and during her natural life, and at her death to be and remain the property of" her minor children, naming them, an irrevocable trust was created in favor of the children, and they took a valid fee in remainder in the property.

Appeal from Trial Term, Niagara County.

Action by Marcena S. Sears and others against Charles N. Palmer. From a judgment for plaintiffs, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

E. M. Ashley, for appellant.
David Millar, for respondents.

NASH, J. This action is in ejectment to recover the possession of a village lot in the town of Newfane, Niagara county. The plaintiffs

are the children and grandchildren of Marilla Strong, and claim title to the premises under and by virtue of a conveyance as follows:

"This indenture, made the 20th day of November, 1851, between Jacob Albright and wife of the first part, and Marilla Strong of the second part, witnesseth: That the said parties of the first part, in consideration of the sum of thirty-five dollars, lawful money of the United States, to them in hand paid, by these presents do grant and convey to the said party of the second part, for and during her natural life, and at her death to be and remain the property of Marcena S. Strong, John V. Strong, and Harriet E. Strong, her present heirs, all the following described premises, to wit: Village lot," etc., with covenants of warranty.

Marcena, John, and Harriet were children of Marilla Strong, and at the time of the conveyance were aged eight, four, and two years, respectively. Marilla Strong paid for the lot, took and received the deed, entered into possession, and three years later, December 16, 1854, recorded the deed. There was no delivery of the deed other than to Marilla Strong. In 1863 she sold the lot for its full value, and gave her warranty deed in fee simple to the purchaser, and by mesne conveyances the title so conveyed became vested in the defendant. Marilla Strong died August 15, 1903, and this action was commenced June 25, 1903.

The appellant contends that there was no delivery to, or acceptance of the deed from, Albright by the plaintiffs; that the contract was not with, nor the grant to, them; that they were strangers to the transaction; and it is fairly inferable that their mother's intentions as to them and the provisions for their benefit in the instrument were in their nature testamentary. In support of this contention, Townsend v. Rackham, 143 N. Y. 516, 38 N. E. 731, is relied upon. The case there in brief was this: Catherine Farnham, the owner of a farm, conveyed it to Almeron and Valentine Wilson, two of her grandchildren, and took back from them a mortgage thereon as a security for the payment of certain sums to herself in each and every year thereafter during her natural life, "and $1,000 to Maria Leach [a sister], and $500 to Esther Lutts [a grandchild], payable to them five years after her death." Subsequently, this mortgage was satisfied, and a series of mortgages executed between the same parties containing the same conditions as to Maria Leach and Esther Lutts, except in the last mortgage the condition as to the payment of any money to them was left out. The referee found that the mortgages up to the last one, in which the sister and grandchild were left out, and in which they had no interest, had all been satisfied in their order, and the satisfaction pieces duly recorded, and that each subsequent mortgage was intended as a substitution for the preceding one, which was satisfied by Catherine Farnham. He also found that she took possession of the mortgages upon the understanding and belief that the whole arrangement was testamentary in its character and in the nature of a will; that she retained possession and control of the various mortgages until new arrangements were made, upon good consideration passing to her, and then she duly satisfied such mortgages, and received others in their place. He further found that neither Maria Leach nor Esther Lutts had any knowledge or took any delivery of, or in any manner accepted or assented to, any of the mortgages mentioned in the complaint, or any of the provisions in any of

the mortgages, providing in any way in their favor prior to the satis-
faction of such mortgages. Peckham, J., delivering the opinion of the
court, said:

"It seems to us to be a very plain case against the plaintiffs. They urge
that the conditions in these mortgages amount to a promise made by one
person to another for the benefit of a third, and that such third person can
enforce the liability thus created. There are, as it seems, many answers to
that position. Catherine Farnham at the time the first deed from her to the
grantees therein named was the owner in fee of the farm therein conveyed.
The mortgage given back to her was security for the purchase money of the
farm. There is no evidence that she ever owed a penny or was under any
pecuniary obligation to her sister or granddaughter named in the mortgage
which she took back. As there was not a particle of proof of such a fact,
the promise—assuming one was made—of her debtors made to her to pay
money to a third person to whom she owed no debt, and was under no legal
liability, was not such a promise as could be taken advantage of by that
third person. Again, the form of the condition in these various mortgages,
and the actual dealings between the parties to them, as evidenced by the rec-
ords of the several deeds and mortgages, afford an overwhelming presump-
tion that the provisions for the payment to these ladies after the death of
the mortgagee, Catherine Farnham, were in their nature testamentary, amount-
ing to nothing more than a legacy or gratuity given by or coming from the
mortgagee, and the whole conditions of the various mortgages were obviously
subject to alteration at any time by the assent of the parties thereto."

In Everett v. Everett, 48 N. Y. 218, relied upon by the plaintiffs, the
action was ejectment. The controversy arose over the title to the Vail
lot, so called. Walter Everett purchased the lot, and by his request
Vail made the deed to Collins Everett, infant son of Walter. The deed
was taken by the father, and retained in his possession. It was never
put on record. It was never delivered to the son, or its existence
known to him. The son died, and after his death the father destroyed
the deed, and obtained another deed from Vail to Hudson Everett,
who conveyed the premises to Walter Everett, the father, who died
leaving a will by which he devised a life estate to his widow, the defend-
ant. Held, that there was not a resultant trust created in favor of the
father. In passing, the court remarked:

"This is not the case of a deed executed by the father to the son, and after-
ward retained without delivery. Such deeds have been held, in numerous
instances, not to have passed any title to the grantee, because there was no
delivery. The grantor retains the title until he has delivered his deed. But
here the deed is perfect, and the delivery is absolute against the grantor. The
title could not pass to Walter, the father, for he was not named in the con-
veyance. He paid the consideration, and received from Vail a deed to his
son with a design. He knew, or at least should be assumed to have known,
that at some period in the then future the fact would be no longer a secret.
Perhaps he expected his son to survive him, in the regular course of nature,
and take possession at his death. This is more strongly probable than it is
that he intended a security or trust in his own favor. He never asked his
son to reconvey, and it was not until the disputes after the death of Collins
that he destroyed the deed to him, and obtained a new one from Vail. It was
then too late to alter his intentions. He could not change the alienee that way,
nor administer justice according to his own notions so summarily."

It was further said:

"The judge at circuit charged in this case that no title passed to Collins
Everett by the deed to him unless it was delivered to him. This was an error."

In Everett v. Everett the father paid the purchase price, and took the
conveyance to his minor son. Here the mother paid the consideration,

and took a conveyance of a life estate for herself, with remainder over to her children in fee. The language of the grant is: "Said parties of the first part do grant and convey to the party of the second part for and during her natural life, and at her death to be and remain the property of Marcena S., John V., and Harriet E. Strong." In one case the father paid the consideration, and took title to the fee in his son; in the other the mother paid the consideration, took a conveyance of the life estate to herself, and the fee in her children. There does not seem to be any distinction between the two cases as to the legal rights of the parties. The deed, made by the direction of the mother, in form conveying the premises to herself for life, with remainder in fee to her children, had the effect of creating an irrevocable trust in their favor. In principle the case here cannot be distinguished from that of Mc-Pherson v. Rollins, 107 N. Y. 316, 14 N. E. 411, 1 Am. St. Rep. 826. There Andres Deming, with the purpose of providing for his two daughters and their children, made a division of his real estate, and conveyed one part to his daughter, Fannie Gray. She executed to him a mortgage upon that part conveyed to her, as follows:

"This indenture, made this 14th day of July, 1873, between Fannie Gray of the first part and Andres Deming of the second part, "witnesseth: That the said party of the first part, in consideration of the sum of one dollar and of the execution and delivery by the said Andres Deming to the said Fannie Gray of a certain deed bearing even date herewith, conveying certain lands of said Deming, situate," etc.

The condition of the mortgage was:

"This grant is intended as a security for the payment of the sum of fifty dollars annually to said Deming for and during his natural life, on or before the 15th day of May in each year thereof, reckoning from the date of this mortgage, and for the further payment of the further sum of $250 annually to said Deming, or to the general guardian of Florence McPherson, on or before the 15th day of May in each year hereafter, for the benefit of said Florence until the said Florence shall arrive at the age of fifteen years, and thereafter the further sum annually to said Deming or guardian, of one hundred dollars, payable on or before the 15th day of May in each year until the said Florence shall arrive at the age of twenty-one years, for the benefit of said Florence."

A similar provision followed in favor of the plaintiff's infant sister, Ida. The deed and mortgage were recorded in the proper clerk's office on the 21st day of July, 1873, and thereafter, and until the 16th day of February, 1875, were in the custody of Mrs. Gray; that in February, 1874, Deming, at the request of Mrs. Gray, and without payment or other consideration, executed and acknowledged a certificate of satisfaction of the mortgage, and it was recorded on the 9th day of February, 1874, and a memorandum noted in the margin of the record of the mortgage as "discharged on record of discharges of mortgages, page 470"; that thereafter the premises were duly conveyed by or under the authority of Mrs. Gray to the defendants for a full and valuable money consideration paid by them.

The referee found, "as a question of fact and law, that by the proceedings of the 14th of July, above mentioned, and the delivery and execution of the deed and mortgage of that date, an irrevocable trust for the benefit of the plaintiff and her sister Ida was created and declared in the condition of the mortgage in suit; that Deming, the trustee, had

no power to annul or change the condition of the trust; that the discharge of the 6th of February, 1874, above referred to, was therefore, as to said trust and the interests of the beneficiaries, unauthorized and void," and, as a fact, that the Rollins (defendants), prior to and at the time of their purchase, as above stated, had no actual notice of the existence of the mortgage of Mrs. Gray to Andres Deming as a subsisting lien or incumbrance upon the premises therein described, but did find, as a question of law and fact, that they then had constructive notice, or notice sufficient to put them on inquiry as to that fact, which they were bound to regard; that no part of the annuity to the plaintiff or Ida had been paid, and gave judgment of foreclosure according to the prayer of the complaint. In the opinion of the court it is said:

"That a valid trust was created by the terms of the mortgage, and to the effect as found by the referee, and that it continued to exist, there can be no doubt. The transfer of the property was executed, and the relation of trustee and cestui que trust formed and at no time renounced. This question must be deemed closed in this court by its decision in Martin v. Funk, 75 N. Y. 134, 31 Am. Rep. 446. The important inquiry before the referee was whether the defendants had any notice, actual or constructive, of the plaintiff's rights, or of the character in which Deming held the mortgage. His finding that he had no actual notice reduces our inquiry to the effect of the recording act."

It was held that the record of the mortgage, notwithstanding the entry in the record of its discharge, was constructive notice to the defendants.

We think that, within the principle of the McPherson Case, as well as the Everett Case, it must be held that the deed from Albright conveyed a valid fee in remainder to the children of Marilla Strong.

Judgment affirmed, with costs. All concur.